UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| HECTOR HERRERA-SIFUENTES | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL ACTION NO. 5:12-CV-82 |
| | § | CRIMINAL ACTION NO. 5:06-CR-1428 |
| UNITED STATES OF AMERICA | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Petitioner Hector Herrera-Sifuentes's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion to Vacate") (Dkt. No. 1; Cr. Dkt. No. 189), Memorandum in support thereof (Dkt. No. 2; Cr. Dkt. No. 190), and Addendum to Petitioner's Memorandum (Dkt. No. 9; Cr. Dkt. No. 196).[1]   The Government responded to Petitioner's Motion to Vacate on February 3, 2014 (Dkt. No. 25; Cr. Dkt. No. 212), and the Court held an evidentiary hearing on February 10, 2014.   Based on the record of prior proceedings and the testimony and documents received in this matter, Petitioner's Motion to Vacate (Dkt. No. 1; Cr. Dkt. No. 189) is hereby **DENIED** and this matter is **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

Petitioner and a co-defendant were indicted in Laredo, Texas, on October 11, 2006, for kidnapping and conspiring to kidnap an individual and transporting him

---

[1] Dkt. No." refers to the docket number entry for the Court's electronic filing system.   The Court will cite to the docket number entries rather than the title of each filing.   Unless stated otherwise, "Dkt. No." will be used to refer to filings in the civil case number 5:12-CV-82, and "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:06-CR-1428.

in foreign commerce.[2]  The underlying facts of Petitioner's offense were recounted at length in the Fifth Circuit's opinion affirming his conviction after a jury trial.[3]  To summarize, "Lalo," a high-ranking member of the Gulf Cartel, organized the kidnapping of Ramon Hernandez.  Hernandez had lost a load of drugs, and Lalo sent two individuals to the United States to bring Hernandez to Lalo's estate in Mexico.  Once Hernandez arrived at the estate, Petitioner and his co-defendant guarded and brutally beat Hernandez at different times.  During Hernandez's detention, Lalo had him contact his family to arrange ransom payments.  The FBI detained one of Lalo's operatives who crossed the border to collect a payment, and Lalo released Hernandez after sixteen days with instructions to return to Mexico with the remaining money he owed for the drug load.  Hernandez met and cooperated with FBI agents upon entering the United States, and they eventually caught Petitioner and his co-defendant.

Petitioner came before United States District Judge Micaela Alvarez for a jury trial on January 22, 2007.[4]  The trial lasted five days, after which the jury found Petitioner guilty of both counts for which he was indicted.[5]

Petitioner came before Judge Alvarez for sentencing on July 31, 2007.[6]  Petitioner's advisory sentence under the United States Sentencing Guidelines ("Guidelines") was life in prison,[7] which is the sentence he received.[8]  Petitioner

---

[2] Cr. Dkt. No. 8.  Petitioner's co-defendant was also indicted for knowingly receiving money delivered as ransom in connection with a kidnapping offense.  *Id.*

[3] Cr. Dkt. No. 173 at 1–5.

[4] Minute Entry for January 22, 2007, First Day of Jury Trial.

[5] Cr. Dkt. No. 74.

[6] Minute Entry for July 31, 2007, Sentencing Hearing.

[7] *See* Cr. Dkt. Nos. 87 & 99.

timely appealed his conviction to the United States Court of Appeals for the Fifth Circuit[9] and hired a new attorney to represent him.[10]   Shortly after filing his appeal, Petitioner again hired a new attorney to represent him.[11]

On November 29, 2010, the Fifth Circuit affirmed Petitioner's conviction.[12] Petitioner sought a writ of certiorari from the United States Supreme Court, which was denied on June 6, 2011.[13]

Petitioner filed his instant Motion and Memorandum in support on May 16, 2012,[14] and filed the Addendum to his Memorandum on July 25, 2013.[15]   In his three filings, Petitioner asserts seventeen grounds for relief.   One group of claims, Grounds One through Five and Ground Eleven, allege that Petitioner's trial counsel provided constitutionally ineffective assistance with respect to communicating plea offers and advising Petitioner regarding plea offers from the Government, as well as advising Petitioner about other issues before trial.   The rest of his claims allege, among other things, ineffective assistance of his trial counsel during trial, ineffective assistance of his appellate counsel, and different errors committed by the Government.

## II.   STANDARD FOR RELIEF UNDER 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct

---

[8] *See* Cr. Dkt. No. 98.
[9] *See* Cr. Dkt. No. 93.
[10] *See* Cr. Dkt. No. 101.
[11] *See* Cr. Dkt. No. 118.
[12] *See* Cr. Dkt. No. 173.
[13] *See* Cr. Dkt. No. 182.
[14] *See* Dkt. Nos. 1 & 2.
[15] *See* Dkt. No. 9.

appeal and would, if condoned, result in a complete miscarriage of justice."[16] Generally, § 2255 claims generally fall under four categories: challenges to the constitutionality or legality of a sentence; challenges to the district court's jurisdiction to impose the sentence; challenges to the length of a sentence in excess of the statutory maximum; and claims that the sentence is otherwise subject to collateral attack.[17]

## III.   ANALYSIS

### A.  Grounds One–Sixteen: Ineffective Assistance of Counsel

Ineffective assistance of counsel constitutes a violation of a defendant's Sixth Amendment right to counsel, and thus may be challenged in a motion to vacate.[18] To prove ineffective assistance under the standard set forth in *Strickland v. Washington*, a petitioner must demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness (*i.e.* deficiency), and (2) that there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different (*i.e.* prejudice).[19]  A court need not address both components if the petitioner makes an insufficient showing on one.[20] An ineffective-assistance-of-counsel claim is subject to this standard whether a petitioner is challenging the performance of his trial counsel or his appellate counsel.[21]

---

[16] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).
[17] 28 U.S.C. § 2255(a); *see United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).
[18] *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).
[19] *Id.* at 687, 694.
[20] *Id.* at 697.
[21] *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004).

### i. *Grounds One–Five & Ground Eleven*

In Grounds One through Five and Ground Eleven, Petitioner makes various allegations regarding his trial counsel's performance leading up to trial. Petitioner alleges that his trial counsel was ineffective because he advised Petitioner to reject a 7-year plea offer from the Government based on an erroneous understanding of the law and because he failed to communicate a separate 15-year plea offer from the Government. Petitioner claims that he would have accepted the 7-year offer if he had received competent advice, and he would have accepted the 15-year offer had he known about it. Petitioner also alleges that his trial counsel was ineffective because he failed to explain the consequences of a conviction following a jury trial and because he failed to inform Petitioner of options other than going to trial.

While most of these allegations may entitle Petitioner to relief if true,[22] Petitioner bears the burden of persuading the Court that the factual allegations supporting an ineffective-assistance claim are true by a preponderance of the evidence.[23] After receiving documentary evidence and holding an evidentiary hearing where Petitioner, his trial counsel, and the Assistant United States

---

[22] *See Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376 (2012) (discussing counsel's incompetent advice that causes a defendant to reject a plea offer); *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012) (discussing counsel's failure to communicate a plea offer to a defendant before the offer expires); *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (discussing counsel's duty to "inform[] the defendant about the relevant circumstances and the likely consequences of a plea"); *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) (discussing counsel's failure to properly advise a defendant of the maximum sentencing exposure he faced if convicted at trial).

However, Petitioner's allegations in Ground Four, that his trial counsel failed to inform him of options other than going to trial, such as "the option to enter a conditional plea, [or] a plea with a preserved right to appeal," do not entitle him to relief regardless of the findings below. Petitioner did not elaborate on the specifics of these options and he did not allege or show that the Government or the Court would have gone along with any of them. Thus, he has not carried his burden of showing prejudice from the alleged deficiency.

[23] *See United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Attorney ("AUSA") who prosecuted his case testified, the Court finds that none of Petitioner's allegations in the grounds above are true.

Before the evidentiary hearing, Petitioner's trial counsel submitted an affidavit denying all of the allegations in the grounds above.[24]  He stated that he reasonably estimated Petitioner's sentencing exposure if convicted at trial, explained the 7-year offer from the Government, and encouraged Petitioner to accept the deal before Petitioner ultimately decided to reject it.  He also stated that he does not remember the Government ever offering Petitioner a 15-year deal. Attached to his affidavit was a document dated the first day of Petitioner's trial and signed by Petitioner.  The document states that Petitioner acknowledges the Government's 7-year offer but chooses to reject it, and that Petitioner still wishes to proceed to trial knowing that "the Sentencing Guidelines may impose a sentence of 168 to 210 months or life" if he is convicted.

Petitioner testified at the evidentiary hearing that his trial counsel visited him before trial and informed him of the 7-year offer from the Government.[25] Petitioner stated that he initially told trial counsel that he did not want to accept the offer, but that he told trial counsel during their next meeting that he wished to accept.[26]  He admitted that his trial counsel informed him that he could potentially receive life in prison if convicted at trial, but that trial counsel reassured him "that

---

[24] *See* Dkt. No. 20.
[25] *See* Audio Recording of February 10, 2014, Evidentiary Hearing at 9:20.
[26] *See id.* at 9:22.

the case was won."[27]  Petitioner claims that his trial counsel told him the case was won because "he had been with the prosecutor and the prosecutor was with someone from the FBI and they had mentioned that the case was lost."[28]  Petitioner claimed that he decided to go to trial based on this reassurance.  In addition to the 7-year deal, Petitioner testified that his trial counsel informed him of a 15-year deal that was never communicated to him until after the jury returned a guilty verdict.[29]

Petitioner also addressed the document that his trial counsel submitted before the evidentiary hearing.  He testified that he did in fact sign the document, but that he could not read or write English at the time.[30]  He claimed that his trial counsel told him, in Spanish, that it was simply a document confirming that his trial counsel was the one representing him.[31]  Furthermore, he testified that he did not sign the document on January 22, 2007, the first day of trial; rather, he stated that he signed it on the last day of trial.[32]

Petitioner's trial counsel testified and reiterated the substance of his affidavit.  He stated that he does not remember asking Petitioner for his reasons behind rejecting the 7-year deal, but that Petitioner repeatedly insisted on going to trial.[33]  He also testified that he had written out the document that Petitioner signed at counsel table on the first morning of trial because he wanted to "avoid a

---

[27] *See id.* at 9:25.
[28] *See id.*
[29] *See id.* at 9:32.
[30] *See id.*
[31] *See id.* at 9:34.
[32] *See id.* at 9:35.
[33] *See id.* at 10:32.

situation such as this."[34]   He testified that even though Petitioner spoke English fairly well at the time, he accurately explained the contents of the document to Petitioner in Spanish.[35]   He testified that he never had any conversation with the AUSA or an FBI agent where they expressed that the case was lost, and that he never told Petitioner that the case was won.[36]   Finally, he testified that he explained the Guidelines and Petitioner's potential scoring if he accepted the plea offer and if he were convicted after a trial.

After evaluating the evidence presented, the Court finds trial counsel's version of events more credible.   The Court notes at the outset that Petitioner's trial counsel was disbarred for an unrelated matter in 2011.   While disbarment can be relevant in assessing a witness's credibility under certain circumstances,[37] trial counsel nonetheless exhibited truthful demeanor on the stand.

Furthermore, Petitioner failed to adequately explain his conduct leading up to his trial.   On the one hand, Petitioner tried to paint a picture where he completely trusted his trial counsel's advice, including trial counsel's assurance that "the case was won."   On the other, Petitioner claims that he told trial counsel that he wished to accept the 7-year offer from the Government.   When asked why he wanted to accept the 7-year offer if he truly believed the case was won, Petitioner gave wholly unconvincing reasons.

---

[34] *See id.* at 10:19.
[35] *See id.* at 10:27.
[36] *See id.* at 10:53.
[37] *See King v. Univ. Healthcare Sys., LC*, No. 08-1060, 2009 WL 2222700, at *1 (E.D. La. July 24, 2009) ("Federal courts have allowed cross-examination concerning a witness's disbarment or suspension from the practice of law for conduct involving deceit or misrepresentation, and for misappropriating a client's funds because such conduct was particularly probative of his truthfulness.") (internal citations and quotation marks omitted).

Petitioner also failed to explain why he never informed Judge Alvarez of his desire to accept the Government's plea offer when he appeared in court. The fact that Petitioner never did so undermines his story in light of his testimony and the record. He stated that he had previously retained another attorney whom he fired before ultimately retaining his trial counsel. The record also shows that he retained an attorney to represent him on appeal whom he fired before ultimately retaining his appellate counsel. These indicate that Petitioner was not the type of person who would simply allow an attorney to prevent him from entering a plea agreement that he wished to enter. One would think that Petitioner would have either fired his trial counsel at that point or at least informed Judge Alvarez of his desire to accept the plea offer if his allegations were true.

Finally, Petitioner provided an incredible story regarding the document that his trial counsel asked him to sign. Trial counsel testified that he orally translated the document to Spanish, and that Petitioner nonetheless spoke English fairly well. Petitioner admitted that he attended school in the United States from sixth to ninth grade and took English classes but denied knowing English when he signed the document. He stated that he simply thought it was a document confirming that trial counsel was representing him. In addition, he stated that he signed the document on the last day of trial, January 26, 2007, not on January 22, 2007, the date on the document.

Regardless of whether Petitioner understood English at the time, the Court finds Petitioner's story unbelievable. The document states that "the Government

has offered me a plea deal that places me in the Sentencing Guidelines at a level 29 that is a 87 to 108 months [sic]," and that "if I go to trial the Sentencing Guidelines may impose a sentence of 168 to 210 months or life."  Petitioner did not explain how he thought the document could contain so many different numbers if it simply discussed the fact that his trial counsel was representing him.  A reasonable person in Petitioner's position would be initially skeptical of such an explanation anyway; why would a lawyer need his client to sign such a document after trial had already begun?  Petitioner also failed to explain why he would sign the document if, as he claims, the date was incorrect.  These aspects of the document would have been confusing even if Petitioner was unable to read the words written therein.

The Court therefore finds that Petitioner's trial counsel adequately advised Petitioner of the potential consequences of a guilty verdict following trial, namely that he could have been sentenced to life in prison, and that he adequately advised Petitioner regarding the possible sentencing ranges he could face under the Guidelines if he pled guilty.  The Court finds that the Government never extended any plea offer other than the 7-year deal, which Petitioner rejected knowingly and voluntarily despite trial counsel advising him to accept the offer.  Having made these findings, Petitioner is not entitled to relief on Grounds One through Five or Ground Eleven because his trial counsel did not perform deficiently as alleged.

### ii.   *Ground Six: Failure to Inform Petitioner of His Right to Testify*

Petitioner alleges that his trial counsel failed to inform him that the decision to testify at trial rested solely with him, and that his trial counsel "ordered [him]

not to testify." He alleges that had he known he could testify, he "would have provided the ultimate fact-finder with his first-rate knowledge surrounding [his] innocence," and that he was precluded from "clarifying, by admitting, or denying the allegations" in testimony against him.

While a criminal defendant's right to testify is itself constitutional, a petitioner "who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*."[38] The burden of establishing prejudice under *Strickland* is heavy; it "requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result."[39] The Fifth Circuit has noted that it appears "no defendant in any court in the United States has been able to prove *Strickland* prejudice on the basis of his counsel advising him not to testify in his own defense at trial."[40] Circuit courts other than the Fifth have held that the same *Strickland* standard applies to claims of failure to advise of a right to testify and have also focused on the prejudice prong because of its heavy burden.[41]

Here, Petitioner has not shown a substantial likelihood that the result of his trial would have been different if he had testified. All he provides are conclusory statements about the magnitude of testimony that he would have provided; he does not specify any particular fact about which he would have testified that could have

---

[38] *United States v. Harris*, 408 F.3d 186, 192 (5th Cir. 2005).

[39] *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012) (quoting *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011)).

[40] *See id.*

[41] *See, e.g., Morris v. Dept. of Corrections*, 677 F.3d 1117, 1129 (11th Cir. 2012) ("Where defense counsel has not informed the defendant of his right to testify, defense counsel has not acted within the range of competence demanded of attorneys in criminal cases. . . . [T]he Florida Supreme Court did not determine whether there was deficient performance, and instead went straight to the prejudice prong and concluded that Morris had failed to meet his burden of establishing prejudice. We, again, take the same approach.") (internal quotation marks and citations omitted).

changed the result in his trial.  Thus, whether Petitioner characterizes his claim as one where his trial counsel prevented him from testifying or one where his trial counsel failed to advise him that he could testify, he is not entitled to relief on Ground Six.

### iii.  Grounds Seven & Twelve: Failure to Examine and Object to Recordings

Petitioner claims that his trial counsel was ineffective because he failed to examine and object to recordings that were introduced in evidence at his trial. Hernandez, the kidnapping victim, testified on the first and second days of Petitioner's trial.  On the second day of trial, Hernandez testified that FBI agents had given him a recorder once he returned to the United States and that he used it to record conversations he had with Lalo, Petitioner, and his co-defendant.  Judge Alvarez then admitted into evidence the recordings and transcripts of the recordings.  Petitioner states that "[t]he record does not reflect that the government complied with the sealing and recordation requirements under Title 28 [sic] U.S.C. § 2518(8)(a)," and thus his trial counsel provided ineffective assistance when he failed to move for suppression of the recordings.

The requirements that Petitioner references did not apply to the recordings introduced at his trial.  Title 18, United States Code, Section 2518 is part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, "which imposes express limitations on the use of electronic surveillance."[42]   Title III allows government attorneys to obtain a court order from a federal judge authorizing the interception of

---

[42] *United States v. Chavez*, 416 U.S. 580, 580 (1974).

communications.[43]   Section 2518 discusses the sealing requirements for recorded communications following the expiration of a Title-III court order, whereby the Government must promptly make the recordings available to the judge who issued the order.   But no court order is required under Title III when one party to a communication gives prior consent to its recording.[44]

"It is obvious from a reading of subsection (8)(a) in context that it does not apply to consensual recordings not made pursuant to a court order.   In such situations where no judicial order is involved, there is no identifiable judge to direct the sealing."[45]   Because the Government in Petitioner's case obtained Hernandez's prior consent to record his conversations with Lalo and others, it did not need to obtain a court order under Title III (nor is there any indication that the Government did obtain one) and it did not need to comply with the sealing requirements of § 2518(8)(a).

Petitioner further states that the recordings were not properly authenticated under Federal Rule of Evidence 901, and his trial counsel was ineffective for not objecting on that basis.   This contention is refuted by the trial record.   Hernandez testified about the device he used to record the conversation, how he operated the device, and what he did with the recordings after the conversations were completed; he also identified the speakers in the conversations and confirmed that the

---

[43] *See* 18 U.S.C. § 2516.
[44] *See id.* § 2511(2)(c).
[45] *United States v. Head*, 586 F.2d 508, 512–13 (5th Cir. 1978).

recordings and transcripts of the conversations accurately reflected the content of the conversations he had.[46]

Petitioner also argues that his trial counsel provided ineffective assistance because of his failure to investigate. Specifically, Petitioner states that Hernandez testified about audio tapes beyond the four of which Petitioner was aware before trial, and his counsel should have discovered these additional audio tapes. When asked how many total tapes he had used to record his various conversations after his release, Hernandez answered four.[47] But during his trial testimony, he did make a vague reference to the fact that "there's a tape missing where [he was] talking to Lalo's mom, as well as the girlfriend."[48]

In order to succeed on an ineffective-assistance claim based on counsel's failure to investigate, a petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[49] While an investigation may have uncovered a fifth tape, Petitioner has not alleged or shown how the conversations on the tape would have or could have changed the outcome in his trial. For these reasons, Petitioner is not entitled to relief on Grounds Seven and Twelve.

### iv.   Ground Eight: Failure to Strike Jurors

Petitioner argues that his trial counsel provided ineffective assistance because he failed to seek removal during voir dire of an allegedly biased woman who

---

[46] *See* Cr. Dkt. No. 114 at 120–206.
[47] *See id.* at 124.
[48] *See id.* at 199–200.
[49] *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

was ultimately selected as a juror.   Petitioner also argues that his trial counsel provided ineffective assistance when he failed to disqualify two jurors who realized during trial that they were acquainted with a witness.

"In conducting the [*Strickland*] deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased."[50]   Whether a juror is actually biased "centers on a juror's own indication that she has 'such fixed opinions that [she] could not judge impartially [the petitioner's] guilt,' and whether 'her views would prevent or substantially impair the performance of . . . her duties as a juror in accordance with . . . her instructions and oath.'"[51]   If counsel fails to strike a juror that was actually biased, then a court next considers whether petitioner has "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," keeping in mind that failure to challenge an admittedly biased juror "likely constitutes deficient performance."[52]

A review of the record shows that none of the jurors seated in Petitioner's trial were biased.   First, Petitioner vaguely references "a female juror [who] was asked what she thought about the case" and who "responded that the defendants were guilty" during voir dire.   Jurors 17, 18, and 23 stated that they could not be fair and impartial jurors because of their past experiences with kidnapping,[53] but

---

[50] *Seigfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (per curiam).

[51] *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025 (1984); *United States v. Scott*, 159 F.3d 916 (5th Cir. 1998)).   Despite her own indications, a juror may also be biased under the doctrine of "implied bias" in extreme situations, such as when the juror is an employee of the entity prosecuting the defendant.   *See Morales v. Thaler*, 714 F.3d 295, 304 (5th Cir. 2013).

[52] *See Seigfried*, 372 F. App'x at 540 (internal quotation marks omitted).

[53] *See* Cr. Dkt. No. 138 at 58, 94–100.

all three were struck for cause.[54]   Judge Alvarez did not ultimately seat any potential juror who exhibited bias or prejudice during voir dire.

Second, Petitioner points to an incident on the fifth day of trial where two jurors realized that they were acquainted with a witness in the case.   Juror 5 realized that he/she was high-school classmates with the witness,[55] and Juror 10 realized that he/she was the witness's seventh-grade teacher.[56]   However, neither juror had maintained contact with the witness since their respective academic interactions, and both stated that they could impartially evaluate the witness's testimony and Petitioner's guilt.   Thus, none of the jurors seated in Petitioner's trial exhibited bias, and his trial counsel did not perform deficiently when he did not move to strike or disqualify any of them.

> **v.   Grounds Nine & Sixteen: Failure to Object During Government's Closing Argument, Failure to Object to Jury Instructions, and Prosecutorial Misconduct**

Grounds Nine and Sixteen involve Judge Alvarez's instruction on, and the prosecutor's comments during his closing argument on, two different ways that the jury could find that Hernandez was restrained against his will when he traveled from the United States to Mexico.   Judge Alvarez stated in the final jury instructions, and the prosecutor stated during his closing argument, that the jury could find involuntary restraint through either inveiglement or fear.   The jury returned a general verdict of guilty on both counts, and thus did not reveal which theory they accepted.

---

[54] *See id.* at 103, 109.
[55] *See* Cr. Dkt. No. 117 at 113.
[56] *See id.* at 117.

In affirming Petitioner's conviction on direct appeal, the Fifth Circuit declined to address whether the inveiglement theory was legally sufficient because it ultimately decided that the theory was factually unsupported.[57]   Because the inveiglement theory was factually unsupported and because the fear theory was legally sufficient and factually supported, the jurors "would have rejected the [inveiglement] theory due to insufficient evidence, a rejection in no way made more or less likely because of the legal inadequacy that may also exist."[58]

The Fifth Circuit's analysis compels the conclusion that even if Petitioner's trial counsel performed deficiently in failing to object and even if the prosecutor's remarks during his closing argument were improper, Petitioner suffered no prejudice therefrom.[59]   While the general guilty verdict does not reveal which theory the jury accepted, the Court presumes that they relied on the only one with factual support: the legally sufficient fear theory.   The presence or absence of another factually unsupported theory that the jury rejected would have no effect on the guilty verdict that they returned.

### vi.    Ground Ten: Failure to Challenge Jurisdiction

Petitioner argues that his trial counsel provided ineffective assistance by failing to file a pretrial motion to dismiss the indictment for lack of jurisdiction.

---

[57] *See* Cr. Dkt. No. 173 at 8.

[58] *Id.* at 8–9.

[59] Claims of prosecutorial misconduct are analyzed under a standard similar to *Strickland*: a petitioner must show both (1) that the prosecutor made an improper remark, and (2) that the improper remark prejudiced the petitioner.   *See United States v. Ebron*, 683 F.3d 105, 140 (5th Cir. 2012).

Petitioner relies on the fact that Hernandez testified that he was not kidnapped until he arrived in Mexico.

"[A]n indictment is sufficient if it [1] contains the elements of the offense charged and [2] fairly informs a defendant of the charge against him[,] and [3] enables him to plead acquittal or conviction in bar of future prosecutions for the same offense."[60]   The elements of kidnapping under 18 U.S.C. § 1201 are "(1) the transportation in interstate [or foreign] commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully."[61]   The requirement that the victim be transported in interstate or foreign commerce is jurisdictional.[62]   The elements of conspiring to kidnap under § 1201 are (1) the existence of an agreement between two or more people to pursue the offense of kidnapping, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy.[63]

Both the original indictment and the superseding indictment in Petitioner's case alleged the elements of these offenses in their respective counts, including the jurisdictional requirement of transportation in foreign commerce.[64]   The counts also included the name of the alleged victim and cited the statutes under which Petitioner was charged.   Both indictments were sufficient, and Petitioner's trial counsel did not perform deficiently by failing to file a motion to dismiss.

---

[60] *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992) (quoting *United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991)).

[61] Cr. Dkt. No.  173 at 6 (quoting *United States v. Barton*, 257 F.3d 433 (5th Cir. 2001)).

[62] *United States v. Jackson*, 978 F.2d 903, 910 (5th Cir. 1992).

[63] *Id.* (citing *United States v. Montgomery*, 210 F.3d 446 (5th Cir. 2000)).

[64] *See* Cr. Dkt. Nos. 8 & 34.

With respect to challenging jurisdiction during trial, Petitioner's trial counsel moved for a judgment of acquittal after the close of the Government's case and re-urged the motion after the jury verdict, both times arguing that there was insufficient evidence for the jury to find transportation in foreign commerce.[65] Thus, even if the scope of trial counsel's performance with respect to challenging jurisdiction is examined more broadly than Petitioner claims, it could not have been deficient as alleged.

### vii.   Ground Thirteen: Failure to Correct Record on Appeal

Petitioner argues that his appellate counsel provided ineffective assistance because he failed to correct the record before the Fifth Circuit during his direct appeal. Petitioner states that the transcripts prepared were "riddled with hundreds of omissions . . . identified with double-dashes," and that "Hernandez's testimony [was] incomplete."

Contrary to Petitioner's assertions, the double-dashes in the transcripts of his trial do not appear to be omissions, but rather instances when the speaker paused in the middle of the sentence or when one speaker interrupted another speaker, and Hernandez's testimony does not come to an abrupt stop. Regardless, Petitioner has failed to allege or show prejudice from his appellate counsel's supposed failure. Petitioner, who was present during his trial, would have personal knowledge of any specific omissions in the record that could have changed the result of his appeal, yet he does not point to any. Thus, he is not entitled to relief on Ground Thirteen.

---

[65] *See* Cr. Dkt. No. 76; Cr. Dkt. No. 117 at 104.

### viii.     Ground Fourteen: Failure to Challenge Conspiracy on Appeal

Petitioner also alleges that his appellate counsel provided ineffective assistance because he failed to challenge the sufficiency of the evidence sustaining his conspiracy conviction.   The Fifth Circuit noted in the opinion affirming Petitioner's conviction that, although he did not brief the issue, there was sufficient evidence to sustain his conspiracy conviction.[66]   Thus, Petitioner cannot show deficient performance or prejudice from his appellate counsel's failure to brief an issue that would have ultimately failed.

## B. Ground Fifteen: *Brady*

In addition to his ineffective-assistance claims, Petitioner alleges that the Government failed to disclose evidence before his trial in violation of *Brady v. Maryland*.[67]   He states that "the record discloses that numerous statements were made by government witnesses to FBI Agents and other agents," and that "[t]he record further discloses that the prosecution possessed evidence not disclosed to the defense."

Petitioner has not alleged or shown facts that support his *Brady* claim. "There are three components to a *Brady* violation.   First, the evidence must be favorable to the accused, a standard that includes impeachment evidence.   Second, the [Government] must have suppressed the evidence.   Third, the defendant must have been prejudiced."[68]

---

[66] *See* Cr. Dkt. No. 173 at 11.
[67] 373 U.S. 83 (1963).
[68] *United States v. Hughes*, 230 F.3d 815, 819 (5th Cir. 2000).

The only specific allegation that Petitioner makes in Ground Fifteen is that the Government withheld the fifth audio tape discussed in Grounds Seven and Twelve.[69]   But Petitioner has not alleged or shown how the contents of the tape would or could have been favorable to him or that he was prejudiced by the tape's suppression.  Thus, he is not entitled to relief on Ground Fifteen.[70]

## C. Addendum: *Alleyne*

Finally, Petitioner claims that his Sixth Amendment right to a jury trial was violated under the reasoning of *Alleyne v. United States*.[71]   Petitioner's advisory sentence included various enhancements to his total offense level under the Guidelines, and Petitioner argues that these enhancements were improper because their supporting facts were not alleged in his indictment and found by the jury.

In *Alleyne v. United States*, the Supreme Court held "that any fact that increases the mandatory minimum [sentence for a crime] is an 'element' [of that

---

[69] Petitioner also states that various witnesses who testified at trial gave prior statements to the FBI that he had not seen or reviewed before trial.  *See* Dkt. No. 2 at 40.   The statements to which he points were statements about which Petitioner's trial counsel and his co-defendant's trial counsel cross-examined the witnesses.  While Petitioner may not have seen the statements himself, it was clear that the Government turned them over to defense counsel before trial.  These allegations are thus more appropriately characterized as ineffective-assistance allegations, and Petitioner has still not alleged or shown prejudice even if trial counsel performed deficiently by failing to review the statements with Petitioner personally before trial.

[70] In addition, the Court notes that "[b]ecause a challenge under section 2255 may not do service for an appeal, a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both cause for his procedural default and actual prejudice resulting from the error."   *United States v. Acklen*, 47 F.3d 739, 741–42 (5th Cir. 1995) (internal quotation marks omitted).  While a court may invoke procedural default *sua sponte*, the court should consider "whether the petitioner has been given notice that procedural default will be an issue for consideration, whether the petitioner has had a reasonable opportunity to argue against application of the bar, and whether the [Government] intentionally waived the defense" before doing so.  *United States v. Willis*, 273 F.3d 592, 597 (5th Cir. 2001) (quoting *Smith v. Johnson*, 216 F.3d 521 (5th Cir. 2000)).   Because the Government in this case did not argue procedural default in its response and because Petitioner has not otherwise received notice and an opportunity to argue against it, the Court does not rely on procedural default when ruling on Ground Fifteen.

[71] __ U.S. __, 133 S. Ct. 2151 (2013).

crime] that must be submitted to the jury."[72]   The Supreme Court made sure to emphasize that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury."[73]   The Fifth Circuit has accordingly declined to extend *Alleyne*'s reasoning to facts that merely increase a defendant's advisory range under the Guidelines.[74]

Here, the enhancements applied to Petitioners total offense level were sentencing factors, not elements of his offense.   None of the enhancements affected the minimum sentence that Petitioner faced.   Kidnapping under 18 U.S.C. § 1201 can carry certain mandatory minimum sentences depending on different aggravating factors of the offense, but none of those penalty provisions were applied in Petitioner's case.[75]   Thus, there was no *Alleyne* error.

## IV.   CONCLUSION

For the reasons given above, Petitioner is not entitled to relief on any of the grounds presented.   Thus, his Motion to Vacate (Dkt. No. 1; Cr. Dkt. No. 189) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.   The Court finds that Petitioner makes no substantial showing of a denial of a constitutional right, and further, that any appeal would not be taken in good faith.   Accordingly, should

---

[72] *See Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 2155 (2013).
[73] *Id.* at 2163.
[74] *See United States v. St. Junius*, 739 F.3d 193, 213 n.23 (5th Cir. 2013).
[75] *See* Cr. Dkt. No. 99 at 1 (checking the box stating that "No count of conviction carries a mandatory minimum sentence").

Petitioner seek a certificate of appealability, same is **DENIED**, and the Court certifies that any appeal should not be taken *in forma pauperis*.

It is so **ORDERED**.

**SIGNED** this 13th day of June, 2014.


Marina Garcia Marmolejo
United States District Judge